IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 103,881

STATE OF KANSAS,
*Appellee*,

v.

KENNETH CRAWFORD,
*Appellant*.

SYLLABUS BY THE COURT

1.

A claim of prosecutorial misconduct based on comments made during voir dire or closing arguments, neither of which is evidence, will be reviewed on appeal even absent a contemporaneous objection.

2.

Under *State v. Tosh*, 278 Kan. 83, 91 P.3d 1204 (2004), appellate review of allegations of prosecutorial misconduct requires a two-step process. First, an appellate court determines whether there was misconduct, *i.e.*, whether the prosecutor's comments were outside the wide latitude allowed in discussing the evidence. Second, if misconduct is found, the appellate court determines whether those comments compel reversal, *i.e.*, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial.

3.

In analyzing whether a defendant was denied a fair trial because of prosecutorial misconduct, an appellate court considers three factors: (1) whether the misconduct was gross and flagrant, (2) whether it was motivated by prosecutorial ill will, and (3) whether

1

the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. No one factor is controlling.

4.

The factor of whether the misconduct likely had little weight in the minds of the jurors encompasses a dual standard for determining harmlessness:  the standards of K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967). Under both standards, the test is whether the misconduct affected the outcome of the trial, but the levels of certainty required for this determination varies. Under the statutory standard of K.S.A. 60-261, an appellate court declares reversible error if there is a reasonable probability the error affected the outcome of the trial in light of the entire record. A federal constitutional error can be declared harmless under *Chapman* only if there is no reasonable possibility that the error contributed to the verdict.

5.

A prosecutor's statement during voir dire that he or she will probably talk to the jurors after the trial in order to learn the jurors' views on what they liked or disliked and on their suggestions for the prosecutor's improvement is not misconduct.

6.

In arguing to a jury, a prosecutor is not limited to discussing direct evidence. Rather, a prosecutor is allowed considerable latitude in discussing the evidence and drawing reasonable inferences from that evidence.

7.

The prosecutor's misstatement of the law regarding the State's burden to prove the elements of charged crimes beyond a reasonable doubt, which occurred through the use of a jigsaw puzzle analogy, was gross and flagrant misconduct because it was contrary to

2

the consistent warnings in Kansas precedent against such explanations, was planned and calculated, was repeated, and had the effect of minimizing the State's burden of proof.

8.

Under the facts of this case, there is no indication that the prosecutor's misconduct was motivated by ill will.

9.

Under the facts of this case, the State met its burden of establishing beyond a reasonable doubt that the misconduct did not affect the outcome of the trial, *i.e.*, there is no reasonable possibility that the misconduct contributed to the jury's verdict.

Review of the judgment of the Court of Appeals in *State v. Crawford*, 46 Kan. App. 2d 401, 262 P.3d 1070 (2011). Appeal from Barton District Court; RON L. SVATY, judge. Opinion filed September 19, 2014. Judgment of the Court of Appeals affirming the district court on the issue subject to our grant of review is affirmed. Judgment of the district court on that issue is affirmed.

*Daniel E. Monnat*, of Monnat & Spurrier, Chtd., of Wichita, argued the cause and was on the briefs for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Steve Six*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

*Per Curiam*:  On petition for review from *State v. Crawford*, 46 Kan. App. 2d 401, 262 P.3d 1070 (2011), Kenneth Crawford takes issue with the Court of Appeals' rejection of two of his contentions of prosecutorial misconduct and with the standard used by the Court of Appeals when determining if a third instance, which it found to be misconduct, denied him a fair trial.

A multi-prong test applies to the determination of whether a defendant's convictions should be reversed because of prosecutorial misconduct, one portion of which requires a court to determine whether the misconduct likely had little weight in the minds of the jurors. See *State v. Tosh*, 278 Kan. 83, 93, 91 P.3d 1204 (2004). Crawford argues this traditional test is flawed because it leaves open the possibility the misconduct affected the verdict.

After examining *Tosh* and subsequent caselaw, we conclude Crawford's criticism is unwarranted. We also conclude the Court of Appeals reached the correct conclusions in this case: There is no merit to two of Crawford's misconduct claims, and the prosecutor's misconduct in using a jigsaw puzzle analogy did not deprive Crawford of a fair trial. Therefore, we affirm the Court of Appeals and district court.

FACTS AND PROCEDURAL BACKGROUND

Nina Dozier and her husband were driving on a country road when they saw 12-year-old S.V. They stopped, offered S.V. assistance, and drove her to her mother's workplace. S.V.'s mother called 911 after S.V. reported she had been sexually assaulted by Crawford.

At trial, S.V. testified that Crawford had come to her house to see S.V.'s mother. When S.V. told Crawford her mother was not home, he persuaded S.V. to take a ride in his truck. He drove around for a while and then stopped in a rural area near the location where the Doziers found S.V. Crawford asked S.V. to show him her breasts. When she refused, he replied, "What do you think we came down here for?"

S.V. tried to get out of the truck and run away, but Crawford grabbed her and pulled her onto the ground. He straddled her, put his hand over her breast, and "smeared"

4

his face over hers. S.V. continually demanded that Crawford stop. She struggled with him, scratching him on his face and pinching his arm. During the struggle, S.V.'s lip became bloodied. Crawford told S.V. to shut up or he would kill her. After a period of time, estimated by S.V. to be about 5 minutes, she escaped and made her way to the place where the Doziers found her.

Forensic tests determined that S.V. had Crawford's DNA under her fingernails, and law enforcement officers observed that Crawford had a scratch on his face and small injuries under his arm. Crawford explained that he had injured himself while shaving or working under his truck.

When interviewed by law enforcement officers, S.V. described a location in "the country" where Crawford had taken her, indicating she saw trees, grass, a shack, and a metal cross. S.V. directed them to a location, where a detective observed a small metal cross and something that looked like an oil spot in the wheat stubble between some tire tracks. Upon examining Crawford's truck, law enforcement officers observed wheat grain and wheat stubble on the wheel rims and undercarriage and an oil leak under the front end. They did not test the spot in the stubble to verify if it was oil or if it matched fluids from Crawford's truck.

Crawford, when interviewed by law enforcement officers, denied any wrongdoing or having S.V. inside his truck, and her fingerprints were not found in the truck. He also presented alibi evidence establishing he was at a garage with his mechanic at the time S.V. indicated he had come to her house and picked her up. Nevertheless, Crawford admitted he had stopped by S.V.'s house that evening to visit S.V.'s uncle, and he confirmed that he had driven around that evening and had turned around in a wheat stubble field.

Crawford was convicted by a jury of aggravated kidnapping, aggravated indecent liberties with a child under the age of 14, and criminal threat. The district court imposed consecutive sentences, resulting in a controlling prison term of 337 months.

On direct appeal to the Court of Appeals, Crawford argued there were four trial errors and two sentencing errors: (1) His statutory right to a speedy trial was violated; (2) the prosecutor committed three separate acts of prosecutorial misconduct; (3) the district court committed judicial misconduct; (4) he was denied a fair trial based on cumulative error; (5) the district court improperly aggregated three misdemeanors into one prior person felony when calculating his criminal history score; and (6) the district court violated his constitutional rights when it relied on his prior convictions to increase his sentence. The Court of Appeals affirmed Crawford's convictions and sentences. *Crawford*, 46 Kan. App. 2d 401.

Crawford petitioned this court for review, which this court granted in part by accepting review of only the second issue—the three prosecutorial misconduct claims. K.S.A. 22-3602(e) (party may petition the Supreme Court for review as provided in K.S.A. 20-3018[b]); K.S.A. 20-3018(b) (party aggrieved by a decision of the Court of Appeals may petition the Supreme Court for review); Supreme Court Rule 8.03(e) (2013 Kan. Ct. R. Annot. 74) (discretion in granting review); Supreme Court Rule 8.03(g)(1) (order granting review may limit the issues on review).

Specifically, Crawford argues the prosecutor committed misconduct by (A) improperly intimidating or influencing the jury during voir dire, (B) arguing facts not in evidence during closing arguments, and (C) misstating the law regarding the State's burden of proof by using a jigsaw puzzle analogy during voir dire and closing arguments. He contends his convictions must be reversed because this misconduct denied him a fair trial.

6

We begin with a discussion of the standards that govern our review of Crawford's prosecutorial misconduct claims. Preliminarily, we note that a claim of prosecutorial misconduct based on comments made during voir dire or closing arguments, neither of which is evidence, will be reviewed on appeal even absent a contemporaneous objection. See *State v. Armstrong*, 299 Kan. 405, 416, 324 P.3d 1052 (2014); *State v. Dull*, 298 Kan. 832, 836, 317 P.3d 104 (2014); *State v. Stevenson*, 297 Kan. 49, 51, 298 P.3d 303 (2013); *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009).

As to the prosecutorial misconduct standard, as explained in *Tosh*, 278 Kan. at 93, appellate review of allegations of prosecutorial misconduct requires a two-step process. First, an appellate court determines whether there was misconduct, *i.e.*, whether the prosecutor's comments were outside the wide latitude allowed in discussing the evidence. Second, if misconduct is found, the appellate court determines whether those comments compel reversal, *i.e.*, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial. *Armstrong*, 299 Kan. at 416 (citing *State v. Bridges*, 297 Kan. 989, 1012, 306 P.3d 244 [2013]; *Tosh*, 278 Kan. at 85).

In applying the first step in this case, the Court of Appeals panel found no merit in two of Crawford's claims of misconduct. Specifically, it held the prosecutor did not (A) improperly intimidate or influence the jury during voir dire or (B) argue facts not in evidence. The Court of Appeals did find that the prosecutor committed misconduct by misstating the law regarding the State's burden of proof when the prosecutor used a jigsaw puzzle analogy during voir dire and closing arguments.

Consequently, the Court of Appeals moved to the second step of the analysis to determine if the use of the jigsaw puzzle analogy deprived Crawford of a fair trial. In analyzing the second step of whether the defendant was denied a fair trial, an appellate

court considers three factors: (1) whether the misconduct was gross and flagrant, (2) whether it was motivated by prosecutorial ill will, and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. No one factor is controlling. *Tosh*, 278 Kan. at 93; see *State v. Huddleston*, 298 Kan. 941, 953-54, 318 P.3d 140 (2014); *Bridges*, 297 Kan. at 1012.

The Court of Appeals panel cited and applied these factors. *Crawford*, 46 Kan. App. 2d at 414-15 (quoting *State v. McReynolds*, 288 Kan. 318, 323, 202 P.3d 658 [2009]). The panel did not explain the third factor, however. In *Tosh*, this court elaborated on the meaning of this factor, stating that before it can ever override the first two factors, an appellate court must be able to say that the State can meet the harmlessness tests of both K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967). *Armstrong*, 299 Kan. at 417 (citing *Bridges*, 297 Kan. at 1012; *Tosh*, 278 Kan. at 85).

In *Chapman*, the United States Supreme Court directed that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24. In *Tosh*, this court, in using the phrase "likely [had] little weight in the minds of the jurors," observed that the phrase "echo[ed] the federal harmless error rule declared in *Chapman*" and also noted the language "sound[ed] most like the harmlessness examination now required by K.S.A. 60-261." *Tosh*, 278 Kan. at 96. In essence, the *Tosh* court used the phrase "likely [had] little weight in the minds of the jurors" as descriptive shorthand for application of the "dual standard" for determining harmlessness. 278 Kan. at 97.

Subsequently, in *State v. Ward*, 292 Kan. 541, 566, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012), we explained that "our frequent reference, primarily in prosecutorial misconduct cases, to satisfying both harmlessness standards—K.S.A. 2010

8

Supp. 60-261 and *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)—should not be read to imply there are two different tests. [Citations omitted.]" We explained that the two tests use the same benchmark—whether a trial error affected the outcome of the trial—but required different levels of certainty about this conclusion—either a reasonable probability or a reasonable possibility. Specifically, under the statutory standard, an appellate court declares reversible error if there is a reasonable probability the error affected the outcome of the trial in light of the entire record. A federal constitutional error can be declared harmless only if there is no reasonable possibility that the error contributed to the verdict. *Ward*, 292 Kan. at 566.

More recently, we observed that, as a practical matter, the result of the harmless error evaluation depends on the outcome of the federal constitutional standard. "'[B]oth the constitutional and nonconstitutional errors clearly arise from the very same acts and omissions,' and the constitutional standard is more rigorous. Thus, the State necessarily meets the lower statutory standard under K.S.A. 60-261 if it meets the higher constitutional standard." *Armstrong*, 299 Kan. at 417 (citing *Bridges*, 297 Kan. at 1015; *State v. Herbel*, 296 Kan. 1101, 1111, 299 P.3d 292 [2013]).

Thus, as Crawford argues, ultimately an appellate court must determine whether there is a reasonable possibility that the verdict was affected by the prosecutor's misconduct. While we can assume that the Court of Appeals panel understood this and applied the correct test, its truncated discussion legitimately led to Crawford's doubts about what test was applied. We reiterate, however, that the phrase "likely [had] little weight in the minds of the jurors" incorporates the federal constitutional standard and is the test that applies under *Tosh*.

We next apply the test to the alleged misconduct in this case.

9

A. *Comments During Voir Dire*

First, Crawford contends that during voir dire the prosecutor suggested to the prospective jurors they would have to answer to the State or justify their verdict if they were selected to serve as jurors. Crawford argues this was a tactic that improperly intimidated or influenced the jury.

*Prosecutor's Statements*

Crawford complains about the following statements:

"And in this case, I represent the State of Kansas, and I want to talk to you about—I'm going to ask you a number of questions, and as the judge indicated, I'm not trying to embarrass you. This is the last chance we'll have to talk until after the case, and if you're seated as a juror in this case, I can guarantee I'm probably going to want to talk to you when we're done regardless of the outcome, because I like to find out what did you like, what things did you dislike, what are things we can improve on, things like that. So we'll talk after the case is done."

The prosecutor next asked if any of the potential jurors was nervous and admitted that he, too, was nervous.

*No Misconduct*

The analysis begins with the determination of whether the prosecutor committed misconduct. The Court of Appeals answered this question in the negative. *Crawford*, 46 Kan. App. 2d at 411. We agree and conclude the prosecutor's comments were not improper.

It is well established that under Supreme Court Rule 169 (2013 Kan. Ct. R. Annot. 270), "attorneys may discuss a trial with willing jurors after their discharge from jury duty." *Williams v. Lawton*, 288 Kan. 768, Syl. ¶ 9, 207 P.3d 1027 (2009); see Crystal, *Limitations on Zealous Representation in an Adversarial System*, 32 Wake Forest L. Rev. 671, 693 (1997) ("On balance, therefore, it seems proper for lawyers to be able to interview jurors after the case is over, so long as lawyers do not harass the jurors."). But Rule 169 also makes it clear that it is "inappropriate to harass or criticize jurors" and jurors are not required to speak with the attorneys. *Williams*, 288 Kan. at 794.

Recognizing that posttrial discussions with jurors can occur, Crawford argues the prosecutor's comments were improper because he failed to explain that the jurors would not be required to talk to him after the trial. And, according to Crawford, the prosecutor offered a "guarantee" that the jurors would be subjected to "some kind of post-verdict inquisition" in which they would have to defend an acquittal.

We disagree because the prosecutor's comments, when read in context, are not intimidating and do not demand a defense of the verdict from the jurors. In fact, the prosecutor did not even guarantee that he would talk to the jurors. Rather, he indicated that he could "guarantee [he was] probably going to want to talk" to them after the trial "regardless of the outcome." And the prosecutor said that he would want to ask about "things we can improve on." The message was not one of intimidation but a road map of what to expect and an explanation that any discussion was to assist the prosecutor in improving his trial skills. See *Williams*, 288 Kan. at 793 ("postverdict communication with jurors assists attorneys in improving their trial technique and is a valuable educational tool").

We conclude the prosecutor's statements were not improper; they did not stray outside the wide latitude afforded prosecutors. Having found no misconduct, there is no need to continue to the harmlessness inquiry. See *State v. Hunt*, 285 Kan. 855, 866, 176

11

P.3d 183 (2008) ("Obviously, if the comments do not exceed the bounds of fair argument, there is no need to proceed to the second step of assessing plain error.").

B. *Argument Supported by Facts in Evidence*

In addition, Crawford argues the prosecutor committed misconduct during closing arguments by improperly commenting on facts not in evidence. As Crawford correctly argues, it is well established that a prosecutor must limit his or her remarks in closing arguments to facts in evidence. *State v. Baker*, 281 Kan. 997, 1012, 135 P.3d 1098 (2006); see *State v. Richmond*, 289 Kan. 419, 440-41, 212 P.3d 165 (2009). Nevertheless, there does not have to be direct evidence of every point argued. Instead, "a prosecutor is allowed considerable latitude in discussing the evidence and drawing reasonable inferences from that evidence. [Citations omitted.]" *State v. McCaslin*, 291 Kan. 697, 722, 245 P.3d 1030 (2011), *overruled on other grounds by State v. Astorga*, 299 Kan. 395, 324 P.3d 1046 (2014). The prosecutor may even use "picturesque speech" as long as he or she does not refer to facts not disclosed by the evidence. *McCaslin*, 291 Kan. at 722; *State v. Rodriguez*, 269 Kan. 633, 643-45, 8 P.3d 712 (2000).

Here, Crawford complains that during closing arguments the prosecutor stated: "[The detective] said you could see tire marks, and when we got up closer, there was an oil spot where a truck had parked, oil spot right in the middle." The prosecutor also stated: "And the other thing [the detective] noticed, there was that oil drip out in the field. Guess what? Defendant's truck just happens to drip oil right between the two tires, fresh oil."

According to Crawford, it was prosecutorial misconduct to argue that the evidence established that Crawford's truck was at the alleged crime scene because the detective did not collect or test any sample of the "dark spot" in order to identify the material as oil or to link the material to Crawford's truck. The State responds, correctly, that the

prosecutor's comments accurately reflected on the detective's trial testimony and, therefore, the prosecutor did not commit misconduct.

During the detective's testimony, there were numerous references to the detective's belief that the "dark spot" was oil and that it came from Crawford's truck. The detective testified on direct examination that he saw tire marks in the field: "You could see on the ground in the wheat stubble where a vehicle had driven. There were obviously two tire tracks that pushed the wheat stubble down." The detective saw "tire marks as they pulled in where a vehicle was stopped" and "it looked to be a dark spot in the grass or in the wheat stubble that looked to be oil or something." When identifying an exhibit, the detective said, "That's the photograph I took of the oil." Then, in describing the search of Crawford's truck, the detective said he "noticed two oil spots underneath of it from the front end of the motor."

On cross-examination, the detective testified that a "dark spot in the field" drew his attention because it was located between the tire tracks where "two wheels [had been] parked." In other answers, he said the dark spot "looked to be oil" and, at least twice, referred to the spot as "an oil spot." Again, on redirect examination, the detective indicated that he verified that Crawford's truck leaked oil and that in the field he "found what appeared to be a spot of oil between two tire marks."

The prosecutor's comments were supported by evidence—including multiple references in the detective's testimony to an oil spot and an oil leak—and were based on reasonable inferences drawn from the detective's testimony. The prosecutor did not commit misconduct in commenting on the detective's testimony.

13

C. *Jigsaw Puzzle Analogy*

The third instance of alleged prosecutorial misconduct occurred during voir dire and again during closing arguments when the prosecutor explained the State's burden of proof using a jigsaw puzzle analogy. Crawford argues the prosecutor misrepresented the definition of reasonable doubt and minimized the State's burden of proof; therefore, according to Crawford, the error justifies reversing his convictions.

As mentioned, the Court of Appeals ruled partially in Crawford's favor on this argument, finding that the prosecutor committed misconduct. *State v. Crawford*, 46 Kan. App. 2d 401, 414, 262 P.3d 1070 (2011). Of course, Crawford did not petition this court for review of this misconduct ruling. Nor did the State file a cross-petition for review. Hence, the Court of Appeals' holding on misconduct stands, and the ruling is not before this court. See K.S.A. 2013 Supp. 60-2103(h) (to obtain appellate review of adverse rulings, appellee must file notice of cross-appeal); *State v. Novotny*, 297 Kan. 1174, 1180, 307 P.3d 1278 (2013) (same); *Cooke v. Gillespie*, 285 Kan. 748, 754-55, 176 P.3d 144 (2008) (same).

Rather, Crawford asks this court to review the Court of Appeals' determination that the prosecutor's use of the jigsaw puzzle analogy did not deny him a fair trial. See *Crawford*, 46 Kan. App. 2d at 414-16.

*Prosecutor's Statements*

In order to make a determination of whether the misconduct was harmless, we must consider the prosecutor's statements. The first misstatement was made during voir dire. The prosecutor first told the venire panel that "the burden is on the State of Kansas to prove [its case] beyond a reasonable doubt." Then, the following colloquy took place between the prosecutor and one of the prospective jurors:

14

"[PROSECUTOR]: Okay. You have seen jigsaw puzzles. Have you seen jigsaw puzzles where maybe one or two pieces, a couple pieces are missing throughout the puzzle?

"[POTENTIAL JUROR]: I don't know. I suppose.

"[PROSECUTOR]: Okay. Go with me here then, just go with me for a second. We have got a big puzzle like this, the scene is a lighthouse and the ocean and the waves crashing against the rocks, a[nd] there's [a] couple gulls flying around. Got that?

"[POTENTIAL JUROR]: Got it.

"[PROSECUTOR]: Okay. If you're missing some of the pieces to the lighthouse and some of the pieces to the ocean, do you then say, well, that just can't be a lighthouse and an ocean because there's some pieces missing?

"[POTENTIAL JUROR]: No.

"[PROSECUTOR]: Are you—so even though there's some pieces missing, you're able to say that looks like a lighthouse and an ocean?

"[POTENTIAL JUROR]: Yeah, I'm sure.

"[PROSECUTOR]: *That's kind of what I'm talking about is reasonable doubt*. There's probably always going to be some question something that doesn't get answered. The question is, when you put the pieces together, even if there are some pieces missing, does that mean it didn't happen? No. So—and that's kind of why I bring that up. Thanks." (Emphasis added.)

Additionally, during closing arguments, the prosecutor revisited the jigsaw puzzle analogy:

"*You get to determine credibility of witnesses*, and when I talked in voir dire about the jigsaw puzzle, and the scene with the lighthouse and the ocean, there are always going to be pieces of the puzzle missing because none of us were there. None of you were there. The question you got to ask yourself is just because a piece of the puzzle—pieces of the puzzle are missing, does that mean you can't see the whole picture? *Are those questions reasonable in your mind?*" (Emphasis added.)

15

*Fair Trial Inquiry*

In light of the Court of Appeals' holding that these comments were outside the wide latitude allowed a prosecutor in making arguments, *i.e.*, prosecutorial misconduct, we must determine whether the prosecutor's conduct was harmless.

1. *Gross and Flagrant*

The first factor in the harmlessness inquiry is whether the misconduct was gross and flagrant. *Bridges*, 297 Kan. 989, Syl. ¶ 15; *State v. Tosh*, 278 Kan. 83, 93, 91 P.3d 1204 (2004). In determining whether prosecutorial misconduct was gross and flagrant, among the things an appellate court considers are whether the comments were repeated, emphasized improper points, were planned or calculated, violated well-established or unequivocal rules, or violated a rule designed to protect a constitutional right. *State v. Kemble*, 291 Kan. 109, 123, 238 P.3d 251 (2010); see *Bridges*, 297 Kan. 989, Syl. ¶ 18.

Crawford argues that the prosecutor's statements fit within several of these factors: They were planned, repeated, violated longstanding warnings to prosecutors against trying to define reasonable doubt, and violated a fundamental principle of holding the State to its burden of proving guilt beyond a reasonable doubt. The Court of Appeals did not list these factors in its analysis. Nevertheless, the State attempts to explain reasons these factors do not apply.

First, the State attempts to minimize the fact that the jigsaw puzzle analogy was repeated by arguing that the first instance—the one during voir dire—involved the prosecutor's attempt to explain reasonable doubt, but the second instance—the one during closing arguments—was "framed in the context of judging witness credibility." This argument is not persuasive because the prosecutor's use of the jigsaw puzzle analogy

16

during closing arguments referred back to his earlier mention of the analogy and then referred to missing puzzle pieces and whether jurors were left with "reasonable" questions. Thus, at a minimum, a juror could have interpreted the statements to be referring to the State's burden of proof.

Then, the State urges us to adopt the rationale of the Court of Appeals panel. The panel simply noted that although this court "has consistently held that it is prosecutorial misconduct when the State incorrectly defines its burden of proof, the court has also consistently found that the improper definitions did not constitute gross and flagrant misconduct." *Crawford*, 46 Kan. App. 2d at 415. The panel cited *State v. Magallanez*, 290 Kan. 906, 235 P.3d 460 (2010), and *State v. Sappington*, 285 Kan. 176, 169 P.3d 1107 (2007), in which this court concluded a prosecutor's attempt to elaborate on the meaning of reasonable doubt was not gross and flagrant.

There are several distinctions between this case and either *Magallanez* or *Sappington*. Most significant is the additional warning these cases gave to prosecutors. In *Magallanez*, this court emphasized the danger "when prosecutors embellish the burden of proof required in criminal cases, and the prosecutor committed this error by diluting the reasonable doubt standard in this case." *Magallanez*, 290 Kan. at 926-27. Acting on that warning, the court reversed the convictions. The *Sappington* court did not reverse convictions but discussed a long list of cases finding error based on similar statements, many of which resulted in reversal, before noting that the prosecutor had correctly stated the State's burden at several points, including immediately before the misstatement, and, therefore, the conduct was not gross and flagrant. *Sappington*, 285 Kan. at 186.

As Crawford points out, these cases are among a long line of cases in which we have warned that efforts to define reasonable doubt often, perhaps inadvertently, lower the State's burden, lead the jurors into "'a hopeless thicket of redundant phrases and legalese,'" and "'obfuscate rather than assist the jury in the discharge of its duty.'" *State v.*

17

*Walker*, 276 Kan. 939, 956, 80 P.3d 1132 (2003) (quoting *State v. Acree*, 22 Kan. App. 2d 350, 356, 916 P.2d 61, *rev. denied* 260 Kan. 995 [1996]); see, *e.g.*, *State v. Wilson*, 281 Kan. 277, Syl. ¶ 4, 130 P.3d 48 (2006) ("No definition or explanation can make any clearer what is meant by the phrase 'reasonable doubt' than that which is imparted by the words themselves."); *State v. Mitchell*, 269 Kan. 349, 360, 7 P.3d 1135 (2000) (prosecutor's remarks defining reasonable doubt "attempted to alter the State's burden"); *State v. Banks*, 260 Kan. 918, 927, 927 P.2d 456 (1996) (noting that this court "has long held that a jury instruction defining reasonable doubt is unnecessary"); *State v. Douglas*, 230 Kan. 744, 745, 640 P.2d 1259 (1982) (stating that this court adheres "to the position long-established in Kansas jurisprudence that no definition could make the concept of 'reasonable doubt' any clearer than the words themselves").

Furthermore, other courts have found trial error when a prosecutor used the puzzle analogy, giving warning to prosecutors to avoid its use. *E.g.*, *United States v. Pungitore*, 910 F.2d 1084, 1128 (3d Cir. 1990), *cert. denied* 500 U.S. 915 (1991); *People v. Katzenberger*, 178 Cal. App. 4th 1260, 1264-68, 101 Cal. Rptr. 3d 122 (2009), *rev. denied* (2010); *Lord v. State*, 107 Nev. 28, 35, 806 P.2d 548 (1991); *People v. Wilds*, 141 App. Div. 2d 395, 398, 529 N.Y.S.2d 325 (1988); *State v. Johnson*, 158 Wash. App. 677, 685, 243 P.3d 936 (2010), *rev. denied* 171 Wash. 2d 1013 (2011).

In a letter of additional authority filed by Crawford pursuant to Supreme Court Rule 6.09(b) (2013 Kan. Ct. R. Annot. 50), Crawford also asks us to consider *State v. Stevenson*, 297 Kan. 49, 54, 298 P.3d 303 (2013), as an additional authority issuing such a warning. The State counters that *Stevenson* undercuts Crawford's argument.

In *Stevenson*, the prosecutor showed the jury a sign with the words "Wheel of Fortune" printed on it but with one letter missing and pointed out that, although there was a letter missing, there was no reasonable doubt about which letter was needed to complete the title. *Stevenson*, 297 Kan. at 52. The *Stevenson* court found no misconduct

18

under the circumstances because the prosecutor used the analogy to explain that the State had to prove its case beyond a reasonable doubt, not beyond *all* doubt, and because the exhibit demonstrated the concept because only one letter was missing from a well-known title; in essence, the solution to the puzzle was so obvious there was no room for doubt.

In addition, we warned:

"The prosecutor's comments in this case scuffed the line of misconduct without actually crossing it. Nevertheless, only a slight difference in wording would have resulted in error, and use of this analogy seems fraught with possibilities for stepping over the line of error. Especially troubling is the potential for quantifying reasonable doubt by discussing the difference between missing one letter as compared to more. Consequently, we discourage use of the 'Wheel of Fortune' analogy." *Stevenson*, 297 Kan. at 55.

We reiterate and emphasize this warning. The prosecutor's argument in this case demonstrates how differences in wording can move us from a conclusion that a prosecutor scuffed the line of misconduct to a conclusion that a prosecutor crossed the line. In this case the prosecutor did not attempt to distinguish between having no doubt and having a reasonable doubt, a distinction emphasized in the caselaw relied on in *Stevenson*. 297 Kan. at 53. Furthermore, based on the prosecutor's descriptions in this case, neither the jury nor an appellate court can determine how much of the puzzle is left unfinished and how much guessing a juror is being asked to perform. We do not know how abstract the remaining image might be. While both analogies are dangerous attempts to quantify reasonable doubt, the argument in this case is so vague and ambiguous it is misleading. Thus, contrary to the State's argument we do not see *Stevenson* as assisting its cause.

Granted, Crawford's trial took place more than 3 years before this court decided *Stevenson*. Nevertheless, the general tone of the warning in *Stevenson* is not new. Given the consistent warnings in Kansas precedent, the calculated and repeated use of the

analogy that created a theme, and the effect of the argument of minimizing the State's burden of proof, we conclude the conduct was gross and flagrant.

### 2. *Ill Will*

The next step requires this court to examine whether the prosecutor was motivated by ill will. In making this determination, among the things this court has considered are "whether the conduct was deliberate or in apparent indifference to a court's ruling. [Citation omitted.]" *State v. Bridges*, 297 Kan. 989, 1016, 306 P.3d 244 (2013); see *State v. Inkelaar*, 293 Kan. 414, 430, 264 P.3d 81 (2011). In finding the prosecutor did not act with ill will, the Court of Appeals noted that the prosecutor "did not persist in referring to the puzzle over sustained objections or admonitions" by the district court. *Crawford*, 46 Kan. App. 2d at 415. Nevertheless, as we have noted, the prosecutor acted against the repeated admonishments of this court.

While failing to avoid longstanding and repeated warnings is a sign of ill will, we do not perceive from the record any indication that the prosecutor in this case was motivated by ill will toward Crawford or the court.

### 3. *Harmlessness Inquiry*

The final factor is whether the prosecutor's misconduct had little effect on the minds of the jurors. In this regard, Crawford argues because the evidence was not direct and overwhelming, this court could conclude the prosecutor's misconduct affected the verdict. The Court of Appeals declined to discuss the evidence and, instead, merely mentioned that Crawford did not challenge the sufficiency of the evidence on appeal. *Crawford*, 46 Kan. App. 2d at 416. Noting that the district court gave the correct instruction on the State's burden of proof, compliant with PIK Crim. 3d 52.02, the Court of Appeals found that the prosecutor's use of the jigsaw puzzle analogy "did not lead the

jury into ignoring the [State's] proper standard of proof, and the misconduct likely had little weight in the minds of the jurors." *Crawford*, 46 Kan. App. 2d at 416.

Simply because evidence is sufficient does not mean the State is able to establish that the misconduct did not affect the verdict. Hence, we disagree with the Court of Appeals' analysis on that point. But we agree that the fact the district court properly advised the jury of the State's burden of proof significantly mitigates the potential impact of the prosecutor's misconduct. See *State v. Huddleston*, 298 Kan. 941, 956, 318 P.3d 140 (2014) ("Although these instructions do not give the prosecutor a free pass on misconduct, they are appropriate considerations when evaluating whether a jury was misled."); see also *State v. Clark*, 261 Kan. 460, 475, 931 P.2d 664 (1997) ("[W]e hold that the provisions of PIK Crim. 3d 52.02 accurately reflect the law of this State and properly advise the jury in a criminal case of the burden of proof, the presumption of innocence, and reasonable doubt."). And this court assumes the jury followed the district court's instructions. See *State v. Becker*, 290 Kan. 842, 856, 235 P.3d 424 (2010) ("Appellate courts presume that a jury follow[s] the jury instructions."), *superceded by statute on other grounds as stated in State v. Todd*, 299 Kan. 263, 323 P.3d 829 (2014).

Even so, we must evaluate the evidence. The State concedes that the evidence against Crawford was "perhaps not overwhelming," but it argues that the evidence was "strong and direct" and urges this court to consider the fact that the trial court gave the proper pattern instruction on burden of proof and reasonable doubt. Crawford counters that the case against him was weak and points to, among other things, his alibi for the time when S.V. says he arrived at her house and various discrepancies in S.V.'s and her mother's testimony and statements.

Overall, however, we agree with the State's assessment. While the evidence is not overwhelming, the evidence that S.V. had Crawford's DNA under her fingernails after she was found in the country with a bloodied lip is compelling—so compelling in fact

21

that, despite the weaknesses in the State's case argued by Crawford, we conclude the prosecutor's misconduct would have had little weight in the minds of the jurors. More specifically, we conclude the State has met its burden of establishing beyond a reasonable doubt that the misconduct did not affect the outcome of the trial, *i.e.*, there is no reasonable possibility that the misconduct contributed to the jury's verdict. Further, the strength of this evidence is sufficient to overcome our conclusion that the prosecutor's misconduct was gross and flagrant.

Hence, we conclude the Court of Appeals did not err in its determination that the misconduct does not require reversal of Crawford's convictions.

Judgment of the Court of Appeals affirming the district court on the issue subject to our grant of review is affirmed. Judgment of the district court on that issue is affirmed.

MORITZ, J., not participating.

* * *

LUCKERT, J., concurring:  I write separately simply to state that I would take the opportunity presented by Kenneth Crawford's arguments to simplify the prosecutorial misconduct standard of review. The majority's explanation of the "little weight in the minds of the jurors" standard demanded four paragraphs in which it set out the dual standard for determining whether the misconduct affected the jury's verdict. But, as the majority noted, as a practical matter, we are ultimately called upon to apply the federal constitutional harmless error standard of *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967), when assessing whether the misconduct was harmless. Given this practical reality, I would modify the standard by no longer using the "little weight in the minds of the jurors" standard or referring to the lower reasonable probability standard applied under K.S.A. 60-261.

In *State v. Tosh*, 278 Kan. 83, 85, 97, 91 P.3d 1204 (2004), we held that misconduct implicates federal constitutional due process rights. Consequently, I perceive no reason to preserve any references to the lower, statutory standard. Retaining the dual standard and its umbrella description of "little weight in the minds of the jurors" is more confusing than helpful. Either, as in the Court of Appeals opinion in this case, the appellate court omits the explanation or, as in the majority opinion, each opinion is burdened with the fairly lengthy discussion. If the explanation is omitted, confusion results, as evidenced by Crawford's arguments; it is entirely reasonable for parties to question whether the court has imposed the controlling test—the federal constitutional harmless error standard. The alternative of repeatedly including language about the standard of K.S.A. 60-261, which for practical reasons plays no role in the ultimate analysis, places form over substance and causes its own confusion about why we are discussing a statutory standard we are not applying.

To avoid future confusion, I would modify the final step of the *Tosh* fair trial inquiry to state that an appellate court may declare a prosecutor's misconduct harmless only if the State establishes beyond a reasonable doubt that the misconduct did not contribute to the verdict.

BILES, J., and GERALD T. ELLIOTT, District Judge, assigned[1], join in the foregoing concurring opinion.

[1]**REPORTER'S NOTE:** District Judge Elliott was appointed to hear case No. 103,881 vice Justice Moritz pursuant to the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.