NOT DESIGNATED FOR PUBLICATION

No. 121,220

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MONROE EUGENE REED-CHISM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed November 13, 2020. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: A jury convicted Monroe Eugene Reed-Chism of knowingly committing aggravated battery. Reed-Chism appeals, arguing that this court should reverse his knowing aggravated battery conviction for three reasons. First, Reed-Chism contends that this court should reverse his conviction because the trial court erred by not instructing the jury on reckless aggravated battery as a lesser included offense of knowing aggravated battery. Second, Reed-Chism contends that this court should reverse his conviction because the prosecutor misstated evidence during closing arguments. Third, Reed-Chism contends that this court should reverse his conviction because the

1

doctrine of cumulative error requires his conviction's reversal. Nevertheless, because Reed-Chism's arguments are unpersuasive, we affirm.

Reed-Chism, Jhaunnita Nixon, and Charles Nixon lived together in a house next to Delores Gandy's house. Jhaunnita was the mother of Reed-Chism's child, and Charles was Jhaunnita's brother.

During the afternoon of July 10, 2017, Gandy, called emergency services. She reported that she had just witnessed a shooting involving Reed-Chism, Jhaunnita, and Charles. Of note, when Gandy reported the shooting, Gandy knew that the incident involved her three neighbors, but she did not know her three neighbors' names. Regardless, Gandy reported that her male neighbor shot her other male neighbor in the leg before driving away with her female neighbor in his SUV.

When the police responded to Gandy's emergency call shortly afterward, the police found Charles suffering from a gunshot wound to his lower leg. Although Charles accepted medical treatment, Charles would not tell the police who shot him. Despite Charles' noncooperation, the police established that Reed-Chism lived with Charles and Jhaunnita. Given this information, as well as Gandy's belief that Charles' shooter was also Charles' housemate, the police created a photo lineup including Reed-Chism's headshot to have Gandy possibly identify Charles' shooter. In addition to Reed-Chism's photograph, the photo lineup included headshots of five other men whose physical features resembled Reed-Chism's physical features. Gandy, who viewed the photo lineup about two hours after the shooting, identified Reed-Chism as Charles' shooter.

Based on the preceding information, the State charged Reed-Chism with knowingly committing an aggravated battery, a severity level 7-person felony in violation of K.S.A. 2017 Supp. 21-5413(b)(1)(B). Eventually, Reed-Chism's case proceeded to jury trial. There, the State called Charles and Gandy as witnesses.

2

Charles testified that Reed-Chism was one of his closest friends. As a result, when the State asked Charles if he wanted to testify, Charles responded, "If it's go[ing to] help [Reed-Chism] get home, I will, but there's nothing to do with anything relevant to me and him [*sic*]." Regarding his shooter's identity, Charles initially agreed that he had told the police that he did not know his shooter's identity. Yet, Charles later testified that he was certain that Reed-Chism was not his shooter.

Gandy, on the other hand, testified that she was certain that Reed-Chism was Charles' shooter. Gandy explained that on July 10, 2017, she was home when she heard arguing near the front of her house. She explained that at some point during the argument, she opened her front door to see what was happening. She asserted that it was at this point, she saw her neighbors—Reed-Chism, Jhaunnita, and Charles—arguing in their driveway; Reed-Chism was sitting in the passenger side of his parked SUV while Jhaunnita and Charles stood nearby.

According to Gandy, she watched Reed-Chism, Jhaunnita, and Charles engage in a "vulgar" argument for about 15 minutes. Gandy testified that the argument culminated when Reed-Chism left his car, reached behind his passenger seat, and retrieved a gun. Gandy testified that after Reed-Chism retrieved the gun, Reed-Chism, Jhaunnita, and Charles argued "back and forth" for a short time before Charles started yelling at Reed-Chism to "shoot me mother fucker."

Gandy explained the facts of the shooting as follows:

> "[Prosecutor]: Who told who to shoot him?
> "[Gandy]: [Charles].
> "[Prosecutor]: Told [Reed-Chism] to shoot him?
> "[Gandy]: To shoot, yes.
> "[Prosecutor]: And was the gun shot?

3

"[Gandy]: Yes.

"[Prosecutor]: How do you know?

"[Gandy]: I saw the bullet fly out of the gun, the little fire spark, and the guy said —and he was bleeding, you could see him, he said you shot me."

When asked about her view of the shooting, Gandy admitted that she was not sure what Reed-Chism, Jhaunnita, or Charles were wearing during the dispute. All the same, she explained that she knew Reed-Chism, Jhaunnita, and Charles were fighting because they had been her neighbors for at least a few months and because it "was a daily ritual for [Reed-Chism, Jhaunnita, and Charles] to argue, fuss[,] and fight outside." Gandy also testified that Reed-Chism, Jhaunnita, and Charles' driveway was only about 10 feet from her house, and nothing obstructed her view of the shooting.

At trial, Reed-Chism presented no evidence on his behalf. Instead, he argued that he never shot Charles. He alleged that Gandy must have misidentified him as Charles' shooter. And in doing so, Reed-Chism emphasized that Gandy could not remember what he, Jhaunnita, or Charles were wearing during the alleged dispute.

In the end, however, the jury convicted Reed-Chism of knowingly committing aggravated battery. The trial court then sentenced Reed-Chism to 13 months' imprisonment followed by 12 months' postrelease supervision.

Reed-Chism timely appeals.

*Did the Trial Court Err by Not Instructing the Jury on Reckless Aggravated Battery as a*
*Lesser Included Offense?*

When a defendant alleges that the trial court erred in instructing the jury, an appellate court reviews the defendant's jury instruction challenge in three steps. First, an appellate court must consider "'whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). When the defendant does not object to the giving or failure to give an instruction, an appellate court may still review the defendant's jury instruction challenge. The defendant's failure to object, however, affects this court's reversibility inquiry under the third step. 307 Kan. at 317. Second, assuming the defendant's challenge is reviewable, an appellate court must consider the merits of the defendant's jury instruction challenge. This second step requires an appellate court to determine whether the disputed jury instruction was legally and factually appropriate. 307 Kan. at 317. Third, assuming the defendant establishes error, an appellate court must consider whether that error is harmless. 307 Kan. at 317.

Under this third step, if the defendant did not object to the jury instruction error before the trial court, an appellate court will not reverse the defendant's conviction unless the defendant establishes that the giving or failure to give the instruction was clear error. Clear error exists when the defendant firmly convinces the appellate court that the jury would have reached a different verdict but for the jury instruction error. *McLinn*, 307 Kan. at 318.

Here, the parties agree that an instruction on reckless aggravated battery as a lesser included offense of knowing aggravated battery was legally appropriate. See *State v. Green*, 55 Kan. App. 2d 595, Syl. ¶ 9, 419 P.3d 83 (2018), *rev. denied* 309 Kan. 1351 (2019) (holding that "[r]eckless aggravated battery under K.S.A. 2017 Supp. 21-5413[b][2][B] is a lesser included offense of knowing aggravated battery under K.S.A.

2017 Supp. 21-5413[b][1][C] because it is a lesser degree of the same crime"). Also, although Reed-Chism neither requested the reckless aggravated battery instruction nor objected to the lack of reckless aggravated battery instruction below, both parties agree that this court may consider Reed-Chism's jury instruction challenge for the first time on appeal under the clear error standard. As a result, the parties' main dispute hinges on (1) whether the reckless aggravated battery instruction was factually appropriate and (2) if so, whether Reed-Chism can establish that the trial court's failure to give the reckless aggravated battery instruction constituted clear error.

Regarding the factual appropriateness of the reckless aggravated battery instruction, Reed-Chism argues that K.S.A. 2017 Supp. 21-5202(c)'s plain language establishes that the instruction was factually appropriate. In making this argument, Reed-Chism first notes that a lesser included offense instruction is factually appropriate only if "some evidence" supports a defendant's conviction under a lesser included offense. See *State v. Plummer*, 295 Kan. 156, 161-62, 283 P.3d 202 (2012). He next notes that K.S.A. 2017 Supp. 21-5202(c) provides that "[i]f recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally." He then contends that under K.S.A. 2017 Supp. 21-5202(c)'s plain language, a reckless aggravated battery instruction was factually appropriate "as a matter of law" because if the State presented "some evidence" that he knowingly committed an aggravated battery, it also necessarily presented "some evidence" that he recklessly committed aggravated battery.

Also, although it contradicts the preceding argument, Reed-Chism seemingly argues that the reckless aggravated battery instruction was factually appropriate because the State presented little evidence concerning his culpable mental state during the shooting. According to Reed-Chism, the absence of evidence concerning his culpable mental state means that the jury could have found that he committed the aggravated battery recklessly.

6

The State responds that this court's decision in *Green* establishes the factual inappropriateness of an instruction on reckless aggravated battery as a lesser included offense of knowing aggravated battery. The State contends that the *Green* court rejected an argument identical to Reed-Chism's argument about the factual appropriateness of an instruction on reckless aggravated battery as a lesser included offense of knowing aggravated battery.

In *Green*, Green argued that this court should reverse his knowing aggravated battery conviction because at his trial, the trial court failed to instruct the jury on reckless aggravated battery as a lesser included offense of knowing aggravated battery. Green "argue[d] that some evidence support[ed] the lesser included offense jury instruction for reckless aggravated battery because under the statutory provision of K.S.A. 2017 Supp. 21-5202(c), the same evidence that established a knowing mental state also establishes 'some evidence' of a reckless mental state." 55 Kan. App. 2d at 613.

Nevertheless, the panel in *Green* rejected Green's argument after engaging in significant statutory analysis and a review of a prior unpublished decision by this court:

> "But when viewing K.S.A. 2017 Supp. 21-5202 as a whole, subsection (a) states: '[A] culpable mental state is an essential element of every crime defined by this code. A culpable mental state may be established by proof that the conduct of the accused person was committed "ntentionally," "knowingly" or "recklessly."' K.S.A. 2017 Supp. 21-5202(b) provides that '[c]ulpable mental states are classified according to relative degrees, from highest to lowest, as follows: (1) [i]ntentionally; (2) knowingly; (3) recklessly.'
> > "Additionally, the statute defines the mental states for knowingly and recklessly:
> > > '(i) A person acts "knowingly," or "with knowledge," . . . when such person is aware of the nature of such person's conduct or that the circumstances exist [and] when such person is aware that such person's conduct is reasonably certain to cause the result. . . .

'(j) A person acts "recklessly" or is "reckless," when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.' K.S.A. 2017 Supp. 21-5202.

"The plain language of the first sentence in K.S.A. 2017 Supp. 21-5202(c) states: 'Proof of a higher degree of culpability *than that charged* constitutes proof of the culpability *charged*.' (Emphasis added.) Thus, K.S.A. 2017 Supp. 21-5202(c) applies to satisfy the proof of a culpability element of a crime charged against the defendant. According to K.S.A. 2017 Supp. 21-5202(a)-(c), the State here satisfied the knowingly element in the knowing aggravated battery charges by proving the defendant intentionally committed the aggravated batteries.

"One panel of this court has found that the culpability provision does not apply to lesser included offenses under the plain language of the statute. In *State v. Younger*, No. 116,441, 2018 WL 911414 (Kan. App. 2018) (unpublished opinion), [*rev. denied* 308 Kan. 1601 (2018)], the State charged Younger with intentional second-degree murder. The jury was instructed on two lesser included offenses for voluntary manslaughter and involuntary manslaughter. On appeal, Younger asserted that the district court erred in failing to instruct the jury to consider the voluntary manslaughter charge at the same time as the intentional second-degree murder charge, rather than sequentially as a lesser included offense. Younger's argument relied, in part, on finding that the culpability provision under K.S.A. 2016 Supp. 21-5202(c) applies to lesser included offenses. The panel rejected this interpretation upon finding 'the plain language of subsection (c) indicates it only applies to crimes charged.' 2018 WL 911414, at *19. Green's interpretation of K.S.A. 2017 Supp. 21-5202(c) as applied to lesser included offenses also would tend to cause any lesser included offense with a lower culpable mental state than the crime charged to become factually appropriate regardless of whether the facts or the evidence support the applicable mental state and despite the differences in the culpable mental state definitions. Compare K.S.A. 2017 Supp. 21-5202(i) with (j). Therefore, we reject Green's claim that evidence of knowing conduct also amounts to some evidence of reckless conduct." 55 Kan. App. 2d 613-14.

Based on this court's decision in *Green*, it is readily apparent that Reed-Chism's argument about the factual appropriateness of the reckless aggravated battery is fatally

flawed. Both Reed-Chism and Green committed the same crime—knowing aggravated battery in violation of K.S.A. 2017 Supp. 21-5413(b)(1)(B). Also, both Reed-Chism's and Green's arguments are identical. That is, their arguments both hinge on K.S.A. 2017 Supp. 21-5202(c)'s plain language making the reckless aggravated battery instruction factually appropriate "as a matter of law" because evidence that a person acted knowingly may also constitute evidence that a person acted recklessly.

As a result, the *Green* court's holding applies equally to Reed-Chism's current argument about the factually appropriateness of the instruction on reckless aggravated battery as a lesser included offense of knowing aggravated battery. In turn, we adopt the *Green* court's holding and we, thus, reject Reed-Chism's current argument.

Besides, Reed-Chism's argument is unpersuasive for another reason. Our Supreme Court has consistently held that failure to explain why an argument is sound in the face of contrary authority is akin to failing to brief the issue. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019). Here, this court issued the *Green* decision well before Reed-Chism filed his appellate brief. Even so, Reed-Chism never addresses the *Green* decision as contrary authority in his brief. Thus, Reed-Chism's failure to address the *Green* court's analysis means he has also failed to adequately brief his jury instruction argument.

As for Reed-Chism's argument that the reckless aggravated battery instruction was factually appropriate because the State presented little evidence concerning his culpable mental state during the shooting, Reed-Chism's argument is entirely unpersuasive. Reed-Chism's argument ignores that a trial court has no duty to instruct the jury on a lesser included offense unless "some evidence" supports giving the instruction. *Plummer*, 295 Kan. at 161-62. So, Reed-Chism cannot cite to an absence of evidence regarding his culpable mental state as "some evidence" that he acted recklessly.

Notwithstanding the preceding, we note that even if the reckless aggravated battery instruction was factually appropriate, Reed-Chism cannot establish clear error. In making his clear error argument, Reed-Chism repeats his argument that the jury could have found him guilty of recklessly committing aggravated battery because the State presented little evidence on his culpable mental state during the shooting. For this reason, he concludes that "there [was] at least a real possibility that one or more of [the jurors] could have formed a reasonable doubt" as to whether he committed a knowing aggravated battery. Yet, Reed-Chism's argument is problematic.

Although Reed-Chism contends that the State presented no evidence on his culpable mental state, this is not true. To begin with, the State's evidence indicating that Reed-Chism knowingly shot Charles was very strong. Once again, Gandy testified that Reed-Chism shot Charles after a long "vulgar" argument, which culminated with Reed-Chism leaving his car, retrieving his gun, and responding to Charles' taunts to "shoot me mother fucker." Thus, Gandy's testimony indicates that Reed-Chism *intentionally* shot Charles because it was his conscious objective to do so. Because the State's evidence showed that Gandy shot Charles intentionally, the State clearly met its burden of proving that Reed-Chism *knowingly* shot Charles. See K.S.A. 2017 Supp. 21-5202(c) (stating that "[p]roof of a higher degree of culpability than that charged constitutes proof of the culpability charged").

More importantly, none of the evidence presented at Reed-Chism's trial supported that he acted recklessly. Based on the evidence presented at Reed-Chism's trial, we know the following:

- After Charles vulgarly told Reed-Chism to shoot him, the gun fired while Reed-Chism held the gun.
- The gun could not have fired unless Reed-Chism pulled the trigger with a conscious effort to do so.

- For the bullet to have struck Charles, the barrel of the gun had to be pointed in the direction of Charles' body.
- There was no evidence that Reed-Chism was haphazardly holding the gun before it fired.

In short, without evidence indicating that Reed-Chism recklessly shot Charles, Reed-Chism cannot firmly convince this court that the failure to give the reckless aggravated battery instruction as a lesser included offense of knowing aggravated battery constituted clear error.

Also, it is worth mentioning that Reed-Chism's defense theory hinged on the credibility of Gandy's testimony. Although Reed-Chism presented no evidence at his trial, his closing arguments focused on presenting the jury with two options: It could either find him guilty of knowing aggravated battery based on Gandy's testimony. Or, it could discredit Gandy's testimony, finding him not guilty of knowing aggravated battery based on a case of mistaken identity. Neither of those options gave the jury a choice to convict Reed-Chism of reckless aggravated battery.

Thus, given the State's evidence and his defense theory, Reed-Chism cannot establish that the jury would have reached a different verdict but for the trial court's failure to instruct the jury on reckless aggravated battery as a lesser included offense of knowing aggravated battery.

*Did the Prosecutor Commit Reversible Error by Misstating the Evidence During Closing Arguments?*

When a defendant argues that the prosecutor committed error, an appellate court considers the defendant's challenge under a two-step process. First, this court must determine whether the prosecutor committed error. In making this determination, an

"appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case . . . ." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). Second, if the defendant establishes error under the first step, an appellate court must determine whether the error was harmless under the constitutional harmless error test. Under this test, the party benefiting from the error must establish that there is no reasonable possibility that the error resulted in the jury's guilty verdict. 305 Kan. at 88.

During closing arguments, the prosecutor told the jury that "[Gandy] saw [Reed-Chism] point the gun at [Charles]." On appeal, Reed-Chism takes issue with this statement. He argues that Gandy never testified that she saw Reed-Chism point the gun at trial. Instead, Reed-Chism notes that Gandy testified as follows: "I saw the bullet fly out of the gun, the little fire spark, and the guy said—and he was bleeding—you could see him, he said you shot me." According to Reed-Chism, although "it is fair to infer the gun was physically directed at [Charles]" since Charles was ultimately shot in the leg, the prosecutor's statement implied that he aimed his gun at Charles. Reed-Chism argues that Gandy's testimony does not support an inference that he knowingly aimed his gun at Charles.

The State counters that the prosecutor's statement about Gandy seeing Reed-Chism point his gun at Charles was a reasonable inference based on the evidence.

Our Supreme Court has previously explained that during closing arguments, "'a prosecutor may comment on admitted evidence as long as the remarks accurately reflect the evidence, accurately state the law, and are not intended to inflame the jury's passions or prejudices or divert the jury from its duty to decide the case based on the evidence and controlling law.' [Citation omitted.]" *State v. Pruitt*, 310 Kan. 952, 964, 453 P.3d 313 (2019). When discussing trial evidence during closing arguments, a "'prosecutor is allowed considerable latitude in discussing the evidence and drawing reasonable

12

inferences from that evidence.' [Citations omitted.]" *State v. Crawford*, 300 Kan. 740, 749, 334 P.3d 311 (2014). As a result, as long as the prosecutor's disputed statement was based on a reasonable inference from the evidence, the prosecutor does not commit error. See *State v. Moyer*, 306 Kan. 342, 367, 410 P.3d 71 (2017) (holding that "[s]tatements based on evidence, even when discussing the credibility of witnesses, do not constitute prosecutorial misconduct").

Here, it is undisputed that Gandy testified that she saw Reed-Chism leave his SUV, then retrieve his gun from under the passenger seat, and then shoot Charles. It is undisputed that Gandy testified that Reed-Chism shot Charles after Charles yelled at him to "shoot me mother fucker" multiple times. It is also undisputed that Gandy testified that she "saw the bullet fly out of the gun, the little fire spark, and the guy said—and he was bleeding, you could see him, he said you shot me." As a result, even if Gandy did not explicitly testify that she saw Reed-Chism point his gun at Charles, she testified (1) that Reed-Chism retrieved his gun during the fight, (2) that Charles told Reed-Chism to shoot him, and (3) that Reed-Chism responded by shooting Charles.

Common knowledge establishes that a person cannot knowingly shoot another person without aiming or pointing his or her gun at their intended victim. That is, the very nature of a gun requires a person to point the gun in a direction before knowingly using the gun. With this understanding, as well as the particular facts of this case, a prosecutor could reasonably infer that Reed-Chism had his gun pointed in the direction of Charles when he consciously pulled the gun's trigger. Simply put, because Gandy testified that she "*saw* the bullet fly out of the gun" and "the little fire spark," a prosecutor could reasonably infer that Gandy saw Reed-Chism point his gun at Charles even if Gandy did not explicitly say this. (Emphasis added.)

Finally, it is worth mentioning that even if the prosecutor committed error by stating that Gandy saw Reed-Chism point his gun at Charles, this error was harmless

13

beyond a reasonable doubt. Once more, common knowledge establishes that a person cannot knowingly shoot another person without pointing or aiming his or her gun at the intended victim. Here, the trial evidence showed that Reed-Chism either shot Charles knowingly or did not shoot Charles at all. By convicting Reed-Chism of knowing aggravated battery, it is readily apparent that the jury made a credibility determination in Gandy's favor regarding her eyewitness identification. Accordingly, although Gandy may not have explicitly testified that she saw Reed-Chism point his gun at Charles, the jury would not have convicted Reed-Chism of knowing aggravated battery unless it accepted her testimony about Reed-Chism's decision to shoot Charles. Under those facts, there is no reasonable possibility that the jury would have reached a different verdict but for the prosecutor's comment about Gandy seeing Reed-Chism point his gun at Charles.

*Does Cumulative Error Require Reversal of Reed-Chism's Conviction?*

When a defendant argues that cumulative error requires reversal of his or her conviction, an appellate court determines whether the totality of the circumstances establish that cumulative errors denied the defendant his or her right to a fair trial. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). Nevertheless, cumulative error cannot exist if a defendant has established no trial errors. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018).

In his final argument on appeal, Reed-Chism asserts that even if this court determines that the trial court's jury instruction error and the prosecutor's comment error do not individually require reversal of his conviction, the cumulative effect of those errors require reversal of his conviction because the errors denied him a fair trial. As considered in the preceding sections, however, the trial court did not err by not instructing the jury on reckless aggravated battery as a lesser included offense of knowing aggravated battery. Also, the prosecutor did not misstate the evidence during closing arguments. Because Reed-Chism has not established that any errors occurred at

14

his trial, he is not entitled to reversal of his knowing aggravated battery conviction under the doctrine of cumulative error. As a result, we affirm.

Affirmed.