NOT DESIGNATED FOR PUBLICATION

No. 111,913

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES H. YOUNG, SR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Cloud District Court; KIM W. CUDNEY, judge. Opinion filed October 2, 2015. Affirmed in part, reversed in part, and remanded for further proceedings.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Robert A. Walsh*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ATCHESON, P.J., BUSER and GARDNER, JJ.


*Per Curiam*:  A jury convicted James Young of possession of methamphetamine with intent to distribute within 1,000 feet of school property, unlawful use of a communication facility, unlawful possession of oxycodone, and possession of methamphetamine without a tax stamp. Young appeals, raising numerous claims of error. We affirm in part and reverse in part.

1

*Facts*

We set forth facts relating to the initial stop as background, as its legality is not challenged. On September 7, 2013, Officer Levi Herring of the Concordia Police Department was working the overnight shift when he noticed two men leave a convenience store and get into a truck. While following the truck, Herring noticed the right brake light was broken, the left brake light was very dim, and the truck's turn signal was not used for the proper distance before making a turn. Herring stopped the truck. William Sallee was its driver, and Young was its passenger.

Young claims that at some point after Herring stopped them but before he arrived at the truck's window, driver Sallee pulled something from his pocket and threw it outside the passenger window near where Young was sitting.

Herring approached the truck and asked for Sallee's driver's license and proof of insurance. When Herring returned to his patrol car, he ran a search on Sallee's driver's license and learned it was suspended. Herring then arrested Sallee and placed him in the back seat of his patrol car. Herring went back to the truck and asked Young if he had a valid driver's license or if someone else could move the truck. As he was speaking with Young, Herring noticed a small baggie containing a crystallized powdery substance on the ground outside the truck. Young denied knowing anything about it. Herring then asked Young to step out of the truck, and as he opened the door, Herring noticed a similar baggie between the seat and the door of the truck.

After placing Young in handcuffs and seating him on the truck's tailgate, Herring called for back-up and searched the rest of the truck. Inside the truck Herring found a case that contained syringes, needles, and a spoon or broken end of a spoon. He also found a third baggie which appeared to be similar to the other two. He found a fourth, but

empty baggie, on the ground on the driver's side of the truck. Both Sallee and Young denied knowing anything about the recovered items.

As he was questioning Sallee, Herring noticed that Young was texting on his cell phone, even though his hands were handcuffed behind his back. Herring took the phone from Young, looked at its screen, and noticed what he thought to be an incriminating text message referencing a drug deal. In his report, Herring recorded the message as saying: "I can't turn an eight ball into 300, because I wouldn't get anything out of it." Young testified that the message actually said: "This isn't [a] full eight, bro, because if I get all gone, doesn't recover my 300."

After he took Young's phone, Herring searched Young and found in his pocket a bottle containing one gray pill. An identical pill was found by Herring's back-up, Deputy John Primeaux, on the ground outside the truck. Young told Herring that the pill inside the bottle was oxycodone, and subsequent testing by the KBI confirmed it to be so. Herring also found over $1,300 in small denominations of cash in Young's wallet.

The substance in one of the baggies was tested and was found to be methamphetamine. Herring testified that the collective weight of the three baggies of methamphetamine, including the baggies themselves, was 1.2 grams.

A Cloud County jury convicted Young as charged. The district court sentenced Young to a concurrent 136-month prison sentence for three offenses, and a consecutive 11-month prison sentence for his possession of oxycodone.

*Did sufficient evidence show possession of more than 1 gram of methamphetamine?*

Young's first three arguments focus on the weight of the methamphetamine. First, Young alleges that the State presented insufficient evidence that the methamphetamine he was charged with possessing exceeded more than 1 gram. To prove the charges of possession of methamphetamine with intent to distribute within 1,000 feet of school property and possession of methamphetamine without a tax stamp, the State had to prove that Young possessed more than 1 gram of methamphetamine. See K.S.A. 2014 Supp. 21-5705(d)(3)(B), 21-5705(d)(5); 79-5204(a), K.S.A. 2014 Supp.79-5201(c).

Herring testified three baggies of methamphetamine and one empty baggie were found. No evidence was presented about the weight or the actual dimensions of the baggies. Herring described all four baggies as "square, clear little bagg[ies]" whose "rough weight," meaning the weight of all the methamphetamine plus the weight of the three baggies, was 1.2 grams. And in her closing argument, defense counsel described the baggies as follows: "sometimes when you think about a bagg[ie], you know, you think about a sandwich bag, and these are not sandwich bags, [but] very, very small bags."

Only one of the baggies was actually sent to the KBI for chemical testing. The KBI forensic chemist testified that the substance in that baggie was methamphetamine and that its net weight, excluding the weight of the baggie, was 0.24 grams.

The weight of the methamphetamine was never challenged at trial. Defense counsel never suggested that the methamphetamine might have weighed less than 1 gram or that the baggies could have weighed 0.2 grams or more. Young now contends the actual weight of the methamphetamine was less than 1 gram because the weight of the baggies was not taken into account, and that the jury could not have reasonably inferred that the baggies weighed less than 0.2 grams.

4

When a criminal defendant challenges the evidence's sufficiency, the standard of review is "whether, after reviewing all the evidence in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Raskie*, 293 Kan. 906, 919-20, 269 P.3d 1268 (2012). The appellate court, however, will not "reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence." 293 Kan. at 920. Further, the guilty verdict can be based on circumstantial evidence and any reasonable inferences drawn from the evidence. *State v. Scaife*, 286 Kan. 614, 618-19, 186 P.3d 755 (2008).

Weighing a controlled substance with its baggie is not prohibited when the jury has the opportunity to view and handle the evidence, because jurors can use their common knowledge and experience when determining guilt. See *State v. Beasely*, No. 93,432, 2005 WL 2715672, at *2 (Kan. App. 2005) (unpublished opinion), *rev. denied* 280 Kan. 985 (2006) (finding sufficient evidence that defendant possessed more than one gram of cocaine where the combined weight of the baggie and the cocaine was 2.2 grams). And testing the substance of one item rather than each item is sufficient where a clear inference arises, through similar appearance or packaging or other evidence, that all items contain the same controlled substance. See *State v. Jennings*, 33 Kan. App. 2d 244, 253, 99 P.3d 1145 (2004), *rev. denied* 279 Kan. 1009 (2005).

The jurors in this case had a full opportunity to view and handle the evidence, as the three baggies containing methamphetamine were marked as Exhibit 1 and all exhibits went to the jury room at the time of the jury's deliberations. The jurors were able to use their common sense and knowledge to reasonably infer that the baggies did not weigh 0.2 grams or more. True, the margin for error is small, as the difference between the statutory requirement and the collective weight is only 0.2 grams. But even though jurors may or may not know the weight of 0.2 grams in the abstract, they could handle the three baggies containing methamphetamine and compare the size and relative weight of the baggies to

5

the contents of the baggies, giving them a factual basis for their determination. See *Beasley*, 2005 WL 2715672, at *2. Accordingly, the jury could reasonably infer from the testimony given at trial and from their own handling of the evidence that the weight of the plastic baggies was negligible and that the weight of the methamphetamine was thus more than 1 gram.

Viewing the evidence in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found that Young possessed more than 1 gram of methamphetamine. As noted by this court in *State v. Johnson*, 31 Kan. App. 2d 687, 692, 71 P.3d 481 (2003): "[T]he State is not required to prove an element of a crime to an infallible degree of mathematical certainty. Instead, the State must prove every element of the crime beyond a reasonable doubt. [Citation omitted.]" We find that such a showing was made.

*Did the State misstate evidence during closing argument*?

Young next argues that the prosecutor stated facts not in evidence when he said in closing argument that the methamphetamine weighed 1.2 grams, because the only evidence presented showed that 1.2 grams represented the combined weight of the methamphetamine and the baggies.

Young admits that he did not object at trial to the State's argument. Still, as both parties agree, a prosecutorial misconduct claim regarding comments made during closing arguments can be reviewed by an appellate court even if not objected to at trial. *State v. Crawford*, 300 Kan. 740, 744, 334 P.3d 311 (2014). We first ask whether the comments constitute misconduct, meaning the comments fall "outside the wide latitude allowed in discussing the evidence." *Crawford*, 300 Kan. at 744. We then decide whether the misconduct compels reversal. *Crawford*, 300 Kan. at 744-45. Reversal is compelled when

6

"the statements prejudiced the jury against the defendant and denied the defendant a fair trial." *Crawford*, 300 Kan. at 745.

The prosecutor's specific statement in closing was: "The quantity of that methamphetamine, yeah, there — it's greater than a gram, it's 1.2 grams. That's straightforward." True, the "stating of facts not in evidence is clearly improper." *State v. Carter*, 278 Kan. 74, 80, 91 P.3d 1162 (2004). But a prosecutor, in summing up a case, may "'draw reasonable inferences from the evidence and is allowed considerable latitude in discussing the evidence.' [Citation omitted.]" *Carter*, 278 Kan. at 80.

We find the statement about the weight of the drugs did not introduce facts not in evidence because Herring had testified to that weight. Further, it is reasonable for the State to infer, as could the jury that the weight of the methamphetamine was very close to 1.2 grams, as discussed above. We find the statement falls within the considerable latitude a prosecutor is given in discussing the evidence during a closing argument. Accordingly, we need not determine whether any misconduct compels reversal.

*Did the district court lack jurisdiction because the charging document was defective?*

Young next argues the district court lacked jurisdiction to sentence him because the charging document was defective in failing to state the amount of methamphetamine that he allegedly possessed. Young raises this issue for the first time on appeal.

When information is challenged for the first time on appeal, the reviewing court considers whether the claimed defect (1) prejudiced the preparation of the defendant's defense; (2) impaired the defendant's ability to plead the conviction in a subsequent case; or (3) limited the defendant's right to a fair trial. *State v. Hall*, 246 Kan. 728, 765, 793 P.2d 737 (1990), *overruled in part on other grounds by Ferguson v. State*, 276 Kan. 428,

7

78 P.3d 40 (2003). But Young does not contend that the alleged defect had any such effect.

Instead, Young argues that *Hall* should be overruled, relying on *State v. Portillo*, 294 Kan. 242, 274 P.3d 640 (2012). In *Portillo,* the Supreme Court raised questions about the *Hall* standard but neither applied nor readdressed the standard. *Portillo*, 294 Kan. at 255-56. Instead, the Kansas Supreme Court has reaffirmed use of the *Hall* standard. See *State v. Carr*, 300 Kan. 1, 185-186, 331 P.3d 544 (2014). This court continues to follow the *Hall* standard as well, see *State v. Eversmeyer*, No. 110,902, 2015 WL 2131600, *2 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* May 29, 2015, as we have no authority to overrule Supreme Court decisions. *Johnson v. Westoff Sand Co., Inc.*, 281 Kan. 930, 952, 135 P.3d 1127 (2006).

Because Young's brief fails to contend that he meets the *Hall* standard, we find he has abandoned this issue. See *State v. Anderson*, 291 Kan. 849, 858, 249 P.3d 425 (2011) (finding issues abandoned when they are not briefed or are raised only incidentally and are not argued).

*Did the district court err in not providing lesser-included offense instructions*?

Young next argues that the district court erred by not giving lesser-included offense instructions. He contends that the jury should have been instructed on simple possession of methamphetamine and on possession of less than 1 gram of methamphetamine with the intent to distribute. Young acknowledges that he neither objected to the instructions as given nor suggested lesser-included offense instructions.

When, as here, an instruction issue is raised for the first time on appeal, K.S.A. 2014 Supp. 22-3414(3) governs, and we must consider whether giving or not giving a certain instruction was clearly erroneous. *State v. Williams*, 295 Kan. 506, 510, 286 P.3d

8

195 (2012). In determining whether the district court erred in failing to give a lesser-included offense instruction, we consider whether the instruction would have been legally and factually appropriate. *Williams*, 295 Kan. at 521. If the instruction would have been both legally and factually appropriate, we then determine whether failing to give that instruction was clear error. See *State v. Mireles*, 297 Kan. 339, 365-66, 301 P.3d 677 (2013). In this context, clearly erroneous means that we are "firmly 'convinced that the jury would have reached a different verdict had the instruction error not occurred.' [Citation omitted.]" *State v. McClelland*, 301 Kan. 815, 828, 347 P.3d 211 (2015).

Here, both of the instructions desired by Young would have been legally appropriate. Possession of less than 1 gram of methamphetamine with intent to distribute is a lesser degree of crime than possession of more than 1 gram of methamphetamine with intent to distribute. See *State v. Palmer*, No. 110,624, 2015 WL 802733, at *7 (Kan. App. 2015) (unpublished opinion), *rev. denied* ___Kan.___(September 14, 2015). And simple possession is also a lesser-included offense of the crime of possession with intent to distribute. See *State v. Gilmore*, No. 97,362, 2008 WL 5234530, at *2 (Kan. App. 2008) (unpublished opinion), *rev. denied* 289 Kan. 1282 (2009).

For a lesser-included instruction to be factually appropriate, "there must be actual evidence in the record, together with reasonable inferences to be drawn from that actual evidence that would reasonably support a conviction for the lesser crime." *State v. Wade*, 295 Kan. 916, 926, 287 P.3d 237 (2012). No evidence was presented that the methamphetamine weighed less than 1 gram. The only evidence regarding the methamphetamine's weight has been stated above. Because the weight of the methamphetamine was never questioned at trial, the jury had no reason to infer that the methamphetamine weighed less than 1 gram. Therefore, a lesser-included instruction on this issue would not have been factually appropriate.

The record does, however, contain evidence that would arguably support a conviction of simple possession. Both Young and his mother testified that Young had strong feelings about drugs and was adamantly opposed to them. Young also testified that he did not sell drugs. During cross-examination, Young explained that the incriminating text message Herring discovered was actually Young telling his brother he was not interested in selling drugs. Young also explained that the reason he had so much cash was that the next day he was going to get his driver's license and he owed several hundred dollars to the State, and he was also going to buy presents for his children's birthdays. Young further testified that he did not have a bank account and primarily dealt with cash. Young's mother also testified that Young dealt with cash, did not have a bank account, and had been saving up to pay the amount needed to reinstate his driver's license. Thus a simple possession instruction would have been factually appropriate.

We next determine whether the jury would have reached a different verdict had the error not occurred. *Williams*, 295 Kan. at 510. Here, even though both Young and his mother testified about Young's disdain for drugs, they also both testified that all of Young's siblings were involved with drugs. In fact, the incriminating text message that Young sent referring to an "eighth" was sent to Young's brother who had asked Young to sell drugs. Even though Young claims that in the text message he was telling his brother he was not interested in selling drugs, he also testified that he knows what an "eighth" was, that he had been shown an amount of methamphetamine that was not an "eighth," and that he ended the texting conversation because he did not think it was smart to communicate over the phone. Young admitted that he had been accused of selling oxycodone before. Herring testified that because of the amount of money, and how the methamphetamine was packaged, it was his opinion, based on his training and experience, that Young possessed the methamphetamine with the intent to sell or distribute. We do not engage in credibility calls and are unconvinced that the jury would have reached a different verdict had a simple possession instruction been

10

given. Therefore, we find the district court's decision not to give either instruction was not clearly erroneous.

*Was the oxycodone instruction clearly erroneous*?

Young argues that the district court erred by not instructing the jury on the *lawful* possession of oxycodone. Young contends that such an instruction was warranted because, as he testified, he had a prescription for his oxycodone.

But Young neither requested a lawful possession instruction nor objected to the instructions given. Accordingly, we review this issue for clear error. *Williams*, 295 Kan. at 510.

Curiously, the State's proposed instructions required proof that Young "possessed and had under his control oxycodone, *without a lawful prescription*." (Emphasis added.) But the italicized phrase was omitted from the instructions given by the court, and neither the record nor the parties has explained that omission. The oxycodone instruction given to the jury stated:

"The defendant is charged with unlawfully possessing oxycodone. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved.
"The defendant possessed oxycodone;
"The act occurred on or about the 7th day of September in Cloud County, Kansas, 2013."

Oxycodone is a controlled substance. K.S.A. 2014 Supp. 65-4107(b)(1)(N). But the law does not prohibit the lawful possession of oxycodone, contrary to the language in the instruction. Under Kansas law, an "ultimate user," may legally possess a controlled

11

substance if the possession is "pursuant to a lawful order of a practitioner or a mid-level practitioner." K.S.A. 2014 Supp. 65-4116(c)(3). An "ultimate user" is a "person who lawfully possesses a controlled substance for such person's own use." K.S.A. 2014 Supp. 65-4101(pp). A "practitioner" is someone who is licensed to practice, among other things, medicine. K.S.A. 2014 Supp. 65-4101(ll). A "mid-level practitioner "is "an advanced practice registered nurse . . . who has authority to prescribe drugs." K.S.A. 2014 Supp. 65-4101(cc). Because a person can lawfully possess oxycodone, a lawful possession instruction would have been legally appropriate. See *State v. Zapata*, No. 110,126, 2014 WL 4916613, at *3 (Kan. App. 2014) (unpublished opinion), *rev. denied* ___Kan. ___ (September 10, 2015).

The State likely recognized this, in proposing an instruction requiring proof that Young "possessed and had under his control oxycodone, *without a lawful prescription.*" We recognize that the instruction given to the jury complies with the Pattern Instructions for Kansas. See PIK Crim. 4th 57.040. And we understand that the use of PIK instructions is "strongly recommended." *State v. Cox*, 297 Kan. 648, 662, 304 P.3d 327 (2013); *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009)." Nonetheless, in this case, giving the PIK instruction, unaltered, constituted legal error because it compelled the jury to convict Young of unlawful possession of oxycodone even if he possessed that substance lawfully with a prescription for it. See *State v. Jaushlin*, No. 104,195, 2011 WL 5833291, at *6 (Kan. App. 2011) (unpublished opinion), (finding clear error where similar instruction was given for possession of hydrocodone).

We also find that a lawful possession instruction would have been factually appropriate. Young's defense to the oxycodone charge was solely lawful possession. He admitted to Herring that the pill in the bottle in his pocket was oxycodone and testified at trial that he had a lawful prescription for it. Herring testified that he could not remember whether Young had claimed at the time of his arrest that he had a prescription. Young also testified that because he had previously been accused of selling them he carried only

12

a few oxycodone pills with him, and had the nurse count them at the doctor's office. Young's mother testified that Young had hurt his back and neck several years earlier while working for a tree cutting service and was applying for disability. When the State asked Young if the pill bottle had a prescription with his name on it, Young replied it did not because the prescription had worn off.

The State, in its closing, expressly acknowledged Young's defense of lawful possession but argued that defense was not credible because Young had produced no prescription, the bottle in which the oxycodone was found was unmarked, and another oxycodone pill had been found on the ground outside the car.

But in this review, we ask whether Young presented sufficient evidence, *viewed in the light most favorable to him,* to justify a rational factfinder finding in accordance with his theory. See *State v. Anderson*, 287 Kan. 325, 334, 197 P.3d 409 (2008). We find the facts admitted at trial meet that burden.

Under the circumstances of this case, the jury had no option but to convict Young of unlawful possession of oxycodone, even if it believed Young's testimony that he had a lawful prescription for that substance. Although we cannot resolve the credibility issue, we find a real possibility that the jury would have rendered a different verdict had a lawful possession instruction been given. As a result, the district court's decision to not instruct on lawful possession, either by giving a separate instruction or by including the language suggested by the State, was clearly erroneous. We therefore reverse Young's conviction of this crime and remand for a new trial on it.

*Did sufficient evidence show that Young used a communication facility in Cloud County?*

Young argues that the State presented insufficient evidence to prove that he used a communication facility *in Cloud County* in an attempt to distribute a controlled substance.

"[U]nless specified in statute defining the crime, location of where the crime was committed is generally not an element of the crime; however, venue is a necessary jurisdictional fact that must be proven along with the elements of the actual crime." *State v. Kendall,* 300 Kan. 515, 530, 331 P.3d 763 (2014). The definition of this crime in K.S.A. 2014 Supp. 21-5707, formerly K.S.A. 2009 Supp. 21-36a07, does not specify a location element. Accordingly, Young's argument essentially raises the question of whether Cloud County was the proper venue for prosecuting him for the crime. See *Kendall*, 300 Kan. at 530.

Kansas' venue statutes prescribe where the State may prosecute a crime. *State v. Castleberry*, 301 Kan. 170, 176, 339 P.3d 795 (2014). Pursuant to K.S.A. 22-2602, "[e]xcept as otherwise provided by law, the prosecution shall be in the county where the crime was committed." The State alleged Young used a communication facility in Cloud County in an attempt to distribute a controlled substance.

We review this issue to determine whether sufficient evidence supports the factual finding. See *Castleberry*, 301 Kan. at 175; *State v. Rhyne*, No. 106,313, 2012 WL 5205570, at *4 Kan. App. (2012) (unpublished opinion), *rev. denied* 297 Kan. 1254 (2013). Thus, we ask "whether, after reviewing all the evidence in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Raskie*, 293 Kan. 906, 919-20, 269 P.3d 1268 (2012).

Under K.S.A. 2014 Supp. 21-5707, using a "communication facility" to sell controlled substances is a crime. A "communication facility" is defined as "any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures or sounds of all kinds and includes telephone, wire, radio, computer, computer networks, beepers, pagers and all other means of communication." K.S.A. 2014 Supp. 21-5707(c). This court has construed "use" as "'to put into action or service.'" Tate v. *Castleberry*, 48 Kan. App. 2d 469, 476, 293 P3d 757 (2013). The gravamen of the offense is the use of the communication system—mere physical possession is not enough. *Castleberry*, 301 Kan. at 177-78. For venue purposes, "use" of a communication facility in violation of the statute "occurs simultaneously where the parties to the communication are located." *Castleberry*, 48 Kan. App. 2d at 477.

Young was charged with using a communication facility in an attempt to commit the felony of distribution of a controlled substance. The jury was instructed to find Young guilty of the offense if they found that he "knowingly used a cell phone in an attempt to commit the felony of distribution of a controlled substance," and that "this act occurred on or about the 7th day of September, 2013, in Cloud County, Kansas." That Young was using his cell phone while in handcuffs on that date in Cloud County is undisputed. Young alleges the State never presented evidence that Young sent the incriminating text message while he or the recipient of the text message was within the boundaries of Cloud County.

The record shows that conflicting testimony was offered on this issue. On the night of his arrest, Young was stopped in Cloud County. Young used his cell phone in Cloud County after being placed in handcuffs, which is when Herring noticed the incriminating text message. Young testified that the text message Herring saw had been sent 2 days before his arrest, and the very last message sent—the one presumably sent while he was in handcuffs—mentioned getting a bondsman for Sallee. Young testified on cross-examination that he sent a message on September 5, saying: "That isn't a full eight,

15

bro, because if I get . . . all gone, doesn't recover my 300." But no evidence showed where Young or the recipient of his text message was on that date.

Herring testified that when he took the cell phone from Young's hands on the night of his arrest in Cloud County, he saw a text message in the display of the phone that said, "I can't turn an eight ball into 300, because I wouldn't get anything out of it." Herring was asked on cross-examination, "Did you have an opportunity to look at any other message on the phone?" and he replied, "No, I was more concerned about just evidence and making sure that nobody else was coming to my stop since he was on his phone." Herring was also asked whether he saw any messages on the phone about bonding anybody out, and he replied that he did not recall that.

Although Young testified that he had sent the incriminating text message 2 days before his arrest, Herring testified that he saw only one message in the phone's display and did not review other messages on the phone. It is reasonable to infer that the message which the officer saw on the phone's display was the most recent one Young sent — the one sent as his hands were handcuffed at the time of his arrest in Cloud County. The jury, not this court, weighs the evidence and determines the credibility of the witnesses. *State v. Kesselring*, 279 Kan. 671, 679, 112 P.3d 175 (2005).

Further, the jury had heard uncontradicted testimony that Young had no driver's license in September, that he lived in Cloud County, that he did odd jobs there, that he spent most of his time there, and that he had a physical injury and was applying for disability. Young points to no facts of record giving rise to an inference that he was anywhere but in Cloud County on September 5, 2013, and no such argument was made to the jury.

16

Having reviewed all the evidence in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found that Young was present in Cloud County when he sent the incriminating text message. No more is required.

*Did the jury instructions err in referring to the wrong underlying felony?*

Young argues that the district court erred in giving jury instructions 7 and 8. Young correctly notes that the instruction on unlawful use of a communication facility stated the previous instruction provided the elements for the crime of distribution of a controlled substance, when the previous instruction actually provided the elements for the crime of possession of a controlled substance with intent to distribute.

Because Young neither objected to the instructions nor provided an alternative instruction during trial, we review this issue for clear error.

Jury instruction 8, the unlawful use of a communication facility instruction, stated in relevant part:

> "To establish this charge, each of the following claims must be proved.
>
> The defendant knowingly used a cell phone in an attempt to commit the felony of distribution of a controlled substance;
> . . . .
> The elements of distribution of a controlled substance are set forth in the prior instruction."

But the "prior instruction" alluded to, Jury instruction 7, set forth only the elements of unlawful possession of a controlled substance with the intent to distribute.

17

The statute prohibits using a communication facility in "committing, causing, or facilitating the commission of" certain felonies, or in attempting to commit such acts. See K.S.A. 2014 Supp. 21-5707. Those felonies include both distributing methamphetamine and possessing methamphetamine with the intent to distribute it.

Young argues that these instructions were prejudicial because they allowed the jury to convict on a lesser showing (possession with the intent to distribute) than contemplated in the unlawful use instruction itself (an attempt to distribute). But Young was never charged with distributing or attempting to distribute; thus, the instruction's error was in failing to state in instruction 8 that defendant knowingly used a cell phone in an attempt to commit *the felony of possession of a controlled substance with intent to distribute*, whose elements were accurately set forth in instruction 7.

> "Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. "If the instructions are substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal." *Hawkinson v. Bennett,* 265 Kan. 564, Syl. ¶ 3, 962 P.2d 445 (1998).

We ask whether we are "'"firmly convinced that the jury would have reached a different verdict had the error not occurred."'" *Williams*, 295 Kan. at 510. The jurors likely did not notice and were not confused by the inconsistency between instructions 7 and 8—the district court, the State, and Young's defense counsel certainly did not notice. Considering the instructions together and reading them as a whole, we find the error to be harmless.

*Did the district court err by allowing a juror living in Mitchell County to sit on the jury?*

Young next claims that his right to a fair trial was violated when the district court allowed a juror living in Mitchell County to sit on the Cloud County jury. Young admits that neither the defense counsel nor the State raised this issue by a for-cause or a peremptory challenge. Young does not suggest that the Mitchell County juror was anything but fair and impartial, only that she did not actually reside in Cloud County at the time of the trial.

Under the Kansas Constitution, a criminal defendant is entitled to a trial by a jury comprised of residents of either the county or the district where the offense is alleged to have occurred. Kan. Const. Bill of Rights, § 10. The Supreme Court has construed this provision to mean "[a] jury panel is always selected from the county never from a district." *In re Oberst*, 133 Kan. 364, 369, 299 P. 959 (1931). This requirement has now been codified. See K.S.A. 43-156.

During jury selection, one venire member indicated that she no longer lived in Cloud County but rather lived in Beloit, which is in Mitchell County. After determining that the venire member had done nothing to officially become a Mitchell County resident, the district court decided it would "hold on to" her for awhile, and she was eventually seated on the jury. Young argues that the venire member was not required to take any official steps to establish residency in Mitchell County, thus for the purpose of jury selection she was a Mitchell County resident who should not have been permitted to serve on his jury.

Young admits that no objection was made at trial regarding the Mitchell County juror and fails to show his objection now is timely. But a challenge to a juror's residence is too late when raised after the verdict. See *State v. McCombs*, 163 Kan. 225, 227-28,

19

181 P.2d 473 (1947); *Schuchmann v. Kansas City*, 156 Kan. 282, 284, 133 P.2d 132 (1943); *State v. Hilbish*, 126 Kan. 282, 284, 267 P. 1109 (1928); *State v. Albarracin*, No. 97,536, 2008 WL 850143, at *1-2 (Kan. App.) (unpublished opinion), *rev. denied* 286 Kan. 1180 (2008). We find Young failed to preserve this issue for appeal by not objecting before the verdict was reached.

*Did the district court improperly classify Young's pre-1993 conviction as a person felony*?

Young next argues that the district court erred in calculating his criminal history because the district court classified a pre-1993 in-state conviction as a person felony.

Young did not object to the calculation of his criminal history at trial, but an incorrect criminal history score results in an illegal sentence. See *State v. Neal*, 292 Kan. 625, 630, 258 P.3d 365 (2011). And an illegal sentence claim may be raised for the first time on appeal. *State v. Kelly*, 298 Kan. 965, 975-76, 318 P.3d 987 (2014). Because this question concerns the interpretation of a statute, this court exercises unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12, *cert. denied* 135 S. Ct. 91 (2014).

In *State v. Murdock*, 299 Kan. 312, Syl. ¶ 5, 323 P.3d 846 (2014), the Supreme Court held that for criminal history purposes, all *out-of-state* crimes committed before the enactment of the Kansas Sentencing Guidelines Act in 1993 must be classified as nonperson felonies. The Court of Appeals then determined that *Murdock* did not overrule its decisions regarding *in-state* pre-1993 crimes. See *State v. Waggoner*, 51 Kan. App. 2d 144, 154, 343 P.3d 530 (2015), *petition for rev. filed* February. 18, 2015. We determined whether a prior in-state crime should be classified as a person or nonperson crime by focusing on the nature of the offense as established by the elements of the crime in the statute in effect on the date the defendant committed that prior crime. 51 Kan. App. 2d at 156-57.

20

Recently, the Kansas Supreme Court overruled *Murdock*, holding:

"[T]he classification of a prior conviction or juvenile adjudication as a person or nonperson offense for criminal history purposes under the KSGA is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed." *State v. Keel*, 302 Kan. ___, No. 106,096, 2015 WL 508, 1212, at *21 (2015).

The court's rationale focused on the "fundamental rule of sentencing that the penalty parameters for a crime are established at the time the crime was committed." *Keel*, 302 Kan. ___, Syl. ¶ 9.

*Keel* clarified that the classification of in-state and out-of-state pre-KSGA convictions is to be determined by looking to the statute criminalizing the prior offense (if in state) or to the comparable offense statute (if out of state) in effect on the date the defendant committed the current crime of conviction.

"In this case, however, given the overall design and structure of the KSGA, we have determined that the legislature's failure to include a specific provision describing how to score prior pre-KSGA in-state convictions or juvenile adjudications is inconsequential. The provisions of the KSGA itself as explained below instructed that prior convictions or adjudications be classified at the time of the current crime of conviction." *Keel*, 2015 WL 508 1212, at *10.

Young challenges use of his 1988 in-state conviction of aggravated incest. In accordance with the rule in *Keel*, we look to the aggravated incest statute on the date Young committed his current crime of conviction — September 7, 2013. On that date, aggravated incest was classified as a person felony. See K.S.A. 2014 Supp. 21-5604(c)(2). Therefore, the district court properly classified Young's pre-1993 conviction of aggravated incest as a person felony.

21

*Did the cumulative effect of any errors deprive Young of a fair trial*?

Young argues that the cumulative effect of the trial errors deprived him of a fair trial. When considering the cumulative effect of errors, the reviewing court has unlimited review. *State v. Williams*, 299 Kan. 1039, 1050, 329 P.3d 420 (2014). The cumulative error analysis requires the reviewing court to aggregate all the errors, including the ones deemed harmless, and determine whether collectively the errors were harmful. *State v. Tully*, 293 Kan. 176, 205, 262 P.3d 314 (2011). Essentially, the question is whether the defendant's right to a fair trial was violated by the cumulative effect of the errors. *Tully*, 293 Kan. at 205. In determining whether the defendant's right to a fair trial was violated, we apply the totality of the circumstances test. See *State v. Dixon*, 289 Kan. 46, 71, 209 P.3d 675 (2009).

We do not believe that Young's right to a fair trial was violated by the cumulative effect of the errors we have found.

Affirmed in part, reversed in part, and remanded for further proceedings.

\* \* \*

ATCHESON, J., concurring in part and dissenting in part: This case presents a multifaceted appeal with some interlocking issues. I concur in part and dissent in part. I respectfully dissent from the majority's finding that the State presented sufficient evidence to prove Defendant James Young had more than 1 gram of methamphetamine. And I, therefore, also question the resolution of the related points. I concur in the reversal of Young's conviction for possession of oxycodone but offer a different route to that result. Otherwise, I join in the majority decision.

*Quantity of Methamphetamine*

The State presented insufficient evidence to show Young possessed more than 1 gram of methamphetamine. Based on the evidence admitted at trial, that determination required the jurors to act as human scales able to measure weights with precision to tenths of grams—a physical capacity people generally do not possess. In turn, the verdicts dependent upon findings that Young had more than 1 gram of methamphetamine are impermissibly speculative.

As the majority explains, the evidence on weight was limited and did not address directly whether the methamphetamine weighed more than 1 gram, an element necessary to convict Young of possession of intent to distribute within 1,000 feet of a school and of failing to obtain tax stamps. The arresting officer testified the methamphetamine along with the three small cellophane bags in which it was packaged weighed 1.2 grams. A forensic chemist told the jurors the contents of one of the bags weighed 0.24 grams and tested positive for methamphetamine. That's the evidence. The State didn't offer any direct testimony as to how much all of the methamphetamine weighed without the packaging. The weight of the packaging doesn't count in determining the quantity of illicit drugs for purposes of the charges against Young. See *State v. West*, No. 99,063, 2008 WL 4849472, at *10 (Kan. App. 2008) (unpublished opinion), *rev. denied* 289 Kan. 1285 (2009).

The jurors were then left to figure out if the methamphetamine alone weighed more than 1 gram. Young, of course, had no obligation to offer any evidence as to the weight, and he didn't. The majority miscasts the point on appeal as Young arguing that the methamphetamine weighed less than 1 gram. The actual issue is whether the State presented sufficient evidence to prove beyond a reasonable doubt and without resort to speculation that Young possessed more than 1 gram of methamphetamine. See *State v. Williams*, 229 Kan. 646, 663-64, 630 P.2d 694 (1981) (conviction may not rest on

23

speculation and conjecture); *State v. Perez-Rivera*, 41 Kan. App. 2d 579, 582, 203 P.3d 735 (2009). The majority posits the jurors could have determined the net weight of the methamphetamine by relying on their "common sense and knowledge."

But that assumption both misconstrues the concepts of common sense and common knowledge and overtaxes the physical abilities of most people. So the assumption cannot fill in for the State's failure to present sufficient evidence on this particular element of the charged crimes.

Common sense may be thought of as sound or reasoned judgment in making decisions in contrast to flighty or disjointed thinking. Thus, "common sense" would suggest someone who doesn't know how to swim ought not jump in the deep end of a pool. And common knowledge entails widely held factual premises generally considered to be true. For example, it's "common knowledge" the sun rises in the east and sets in the west. Jurors may rely on either or both in evaluating evidence. So jurors hearing an automobile negligence case could fairly dismiss the defendant as a liar based on his testimony that while driving eastbound in the late afternoon he struck a bicyclist because he was blinded by the setting sun. The testimony contradicts common knowledge, and jurors could exercise common sense to conclude someone testifying that way is probably lying.

But common sense and common knowledge don't come into play here. Metric weights aren't common knowledge in this country because they aren't widely used. They turn up in a few professions and fields. That's not enough.  Here, however, the jurors had at least a limited frame of reference, since they knew that the cellophane envelopes and the methamphetamine together weighed 1.2 grams.

A gram is 0.035 ounces. An ounce doesn't weigh very much, and a gram is but a small fraction of an ounce. A dime, for example, weighs 2.27 grams. The jurors had to

24

figure out if the cellophane envelopes weighed more or less than 0.20 grams and do so accurately without a scale. That's less than the difference between the weight of a dime (2.27 grams) and a penny (2.50 grams). Making that determination is not a function of common sense—I don't think there is a particularly commonsensical way to accurately measure or compare really small weights. The limitation isn't one resulting from a lack of good sense or judgment but from a lack of physical ability or acuity.

We would have an entirely different matter if the charged crimes required a pound of marijuana or more, and the evidence consisted of four bricks of marijuana packaged in plastic wrap that collectively weighed 4.2 pounds. Most people have at least a rough idea of about how heavy a pound is and could reasonably conclude the plastic wrap wouldn't account for three times that much in figuring the weight of the marijuana. But those would be gross determinations, not the precision measurement required here. And maybe a person (like the forensic chemist) with a job that regularly calls for measuring grams and fractions of a gram with a scale could develop a feel for the weight of half a gram or even less. But that would be a special expertise rather than an innate capacity.

In this case, I suppose the jurors could have removed the methamphetamine from the envelopes and using their hands in place of the tray of a scale tried to determine if the all of methamphetamine were five times heavier than the packaging. That would mean the drugs weighed at least 1 gram. But the weights are too small for the average person to make a reasoned judgment rather than a guesstimate. And we don't convict defendants on guesstimates.

On the methamphetamine charge, then, Young would be guilty of the lesser included offense of possession of less than 1 gram with intent to distribute within 1,000 feet of a school. K.S.A. 2014 Supp. 21-5705(d)(3) and (d)(5); see *State v. Wilt*, 273 Kan. 273, 278, 44 P.3d 300 (2002) (If the trial evidence is insufficient to establish an element of the offense of conviction, the defendant may nonetheless be convicted and sentenced

25

for a lesser included offense supported in the evidence, even though the factfinder may not have considered the lesser offense.). That would be a drug severity level 3 felony rather than a level 2 felony. As to the tax stamp charge, I would reverse Young's conviction and enter a judgment of acquittal. The crime requires possession of more than 1 gram of methamphetamine, and there is no lesser included offense. K.S.A. 2014 Supp. 79-5208 (requiring a "dealer" to obtain tax stamps); K.S.A. 79-5201(c) (defining "dealer" to include a person possessing "more than one gram of any controlled substance"); see *West*, 2008 WL 4849472, at *10.

In conjunction with the related issues on appeal, I would find the prosecutor's closing argument referring to the weight of the methamphetamine as 1.2 grams to be an improper statement of both the evidence and the law. The trial testimony established that the drugs and the packaging together weighed 1.2 grams, so I am baffled by the majority's suggestion the prosecutor's assertion otherwise somehow conformed to (or didn't misstate) the evidence. The argument also strongly implied that the jurors could consider the weight of the packaging in determining the quantity of the methamphetamine, and that is not the law. See *West*, 2008 WL 4849472, at *10 (conviction reversed because net weight of cocaine less than statutory threshold of 1 gram required for tax stamp violation). I don't plumb the improper argument further, since it bears only on the jurors' consideration of the weight of the methamphetamine, a point that would be moot given my view that the evidence was insufficient to show Young had at least 1 gram of methamphetamine. For the same reason, I don't explore the district court's failure to give a jury instruction on possession with intent to distribute less than 1 gram of methamphetamine. From my perspective, it, too, is moot.

26

*Conviction for Possession of Oxycodone*

I concur in the reversal of Young's conviction for possession of oxycodone because of the error in the instructions outlining what the State had to prove. But I would analyze the issue a little differently.

As the majority notes, Young testified he had a physician's prescription for the oxycodone, a controlled substance. As provided in K.S.A. 2014 Supp. 65-4116(c)(3), a person may lawfully possess oxycodone if he or she has a legitimate prescription for it. But K.S.A. 2014 Supp. 21-5706 criminalizes the possession of controlled substances without making reference to or allowance for a lawful prescription. The two statutes aren't entirely harmonious. And it's not entirely clear from the statutes whether the lack of a legitimate prescription is an element of the offense or the existence of a legitimate prescription is an affirmative defense. For purposes of this case, the difference is an academic one as I view it.

Assuming a prescription to be an affirmative defense, Young's testimony satisfied the limited burden of production on a criminal defendant to go forward with such a defense. K.S.A. 2014 Supp. 21-5108(c). The State, therefore, had to disprove the defense beyond a reasonable doubt. K.S.A. 2014 Supp. 21-5108(c); see *State v. Johnson*, 258 Kan. 61, 66, 899 P.2d 1050 (1995). In other words, if the jurors had a reasonable doubt about Young's guilt as a result of the evidence bearing on the affirmative defense, they should have voted not guilty. But the instructions made no mention whatsoever of a lawful prescription negating the criminal offense and gave the jurors no basis to even consider acquitting Young on that ground.

In light of the burden of proof on the State, the omission of an affirmative defense from the jury instructions should be reviewed in the same way and by the same standard as an omitted element of the offense. I have outlined that position in detail in my

concurring opinion in *State v. Staten*, No. 108,305, 2015 WL 423644, at \*24-25 (Kan. App. 2015) (unpublished opinion) (Atcheson, J., concurring). The standard treats the error as harmless only if the evidence on the omitted element overwhelmingly favors the State and the defendant effectively concedes the point at trial—something that would almost never be true with an affirmative defense. See *State v. Hargrove*, 48 Kan. App. 2d 522, 529-30, 293 P.3d 787 (2013) (standard for reviewing error based on failure to instruct jurors on element of charged offense). I would apply that standard here and find reversible error, since the instructions failed to inform the jurors that having a lawful prescription for oxycodone would be legally inconsistent with unlawful possession of the drug. So I agree that Young gets a new trial on the oxycodone charge.